**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LISA A. ARDINO, on behalf of herself and all others similarly situated, | Civil Case Number: _____ |
| Plaintiff(s), | **CIVIL ACTION** |
| -against- | **CLASS ACTION COMPLAINT**<br>**AND**<br>**DEMAND FOR JURY TRIAL** |
| LYONS, DOUGHTY & VELDHUIS, P.C., and JOHN DOES 1-25, | |
| Defendant(s). | |

Plaintiff, LISA A. ARDINO, on behalf of herself and all others similarly situated (hereinafter "Plaintiff") by and through her undersigned attorney, alleges against the above-named Defendants, LYONS, DOUGHTY & VELDHUIS, P.C, (hereinafter "LYONS") and JOHN DOES 1-25, collectively (hereinafter "Defendants") their employees, agents, and successors the following:

**PRELIMINARY STATEMENT**

1.      Plaintiff brings this action for damages and declaratory and injunctive relief arising from the Defendants' violation of 15 U.S.C. § 1692 *et seq.*, the Fair Debt Collection Practices Act (hereinafter "FDCPA"), which prohibits debt collectors from engaging in abusive, deceptive and unfair practices.

**JURISDICTION AND VENUE**

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331.  This is an action for violations of 15 U.S.C. § 1692 *et seq.*

3.      Venue is proper in this district under 28 U.S.C. §1391(b)(2) because the acts and transactions that give rise to this action occurred, in substantial part, in this district.

## DEFINITIONS

4.      As used in reference to the FDCPA, the terms "creditor," "consumer," "debt," and "debt collector" are defined in § 803 of the FDCPA and 15 U.S.C. § 1692a.

## PARTIES

5.      The FDCPA, 15 U.S.C. § 1692 *et seq.*, which prohibits certain debt collection practices provides for the initiation of court proceedings to enjoin violations of the FDCPA and to secure such equitable relief as may be appropriate in each case.

6.      Plaintiff is a natural person and a resident of the State of New Jersey, and is a "Consumer" as defined by 15 U.S.C. § 1692a(3).

7.      LYONS is a domestic law firm with its office located at 136 Gaither Drive, Mt. Laurel, New Jersey 08054.

8.      Upon information and belief, LYONS is primarily in the business of acquiring and/or collecting debts that are allegedly due to another.   More specifically, LYONS has attempted to collect a debt allegedly owed by Plaintiff to Target National Bank, and is therefore a "Debt Collector" as that term is defined by 15 U.S.C. §1692a(6).

9.      John Does 1-25, are fictitious names of individuals and business alleged for the purpose of substituting names of defendants whose identities will be disclosed in discovery and should be made parties to this action.

## CLASS ACTION ALLEGATIONS

10.      Plaintiff brings this action as a state wide class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure (hereinafter "FRCP"), on behalf of herself and all New Jersey consumers and their successors in interest (the "Class"), who have received debt collection

letters and/or notices from the Defendants which are in violation of the FDCPA, as described in this Complaint.

11.    This Action is properly maintained as a class action. The Class consists of:

- All New Jersey consumers who received collection letters and/or notices from the Defendants that contained at least one of the alleged violations arising from the Defendants' violation of 15 U.S.C. § 1692 *et seq*.

- The Class period begins one year to the filing of this Action.

12.    The Class satisfies all the requirements of Rule 23 of the FRCP for maintaining a class action:

- Upon information and belief, the Class is so numerous that joinder of all members is impracticable because there are hundreds and/or thousands of persons who have received debt collection letters and/or notices from the Defendants that violate specific provisions of the FDCPA. Plaintiff is complaining of a standard form letter and/or notice that is sent to hundreds of persons;

- There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member.  These common questions of law and fact include, without limitation:

    a.    Whether the defendants violated various provisions of the FDCPA including but not limited to:   Section §§ 1692g(a)(5) and 1692e(10);

    b.    Whether Plaintiff and the Class have been injured by the Defendants' conduct;

      c.      Whether Plaintiff and the Class have sustained damages and are entitled to restitution as a result of Defendants' wrongdoing and if so, what is the proper measure and appropriate statutory formula to be applied in determining such damages and restitution; and

      d.      Whether Plaintiff and the Class are entitled to declaratory and/or injunctive relief.

- Plaintiff's claims are typical of the Class, which all arise from the same operative facts and are based on the same legal theories.

- Plaintiff has no interest adverse or antagonistic to the interest of the other members of the Class.

- Plaintiff will fairly and adequately protect the interest of the Class and has retained experienced and competent attorneys to represent the Class.

- A Class Action is superior to other methods for the fair and efficient adjudication of the claims herein asserted. Plaintiff anticipates that no unusual difficulties are likely to be encountered in the management of this class action.

- A Class Action will permit large numbers of similarly situated persons to prosecute their common claims in a single forum simultaneously and without the duplication of effort and expense that numerous individual actions would engender.  Class treatment will also permit the adjudication of relatively small claims by many Class members who could not otherwise afford to seek legal redress for the wrongs complained of herein.  Absent a Class Action, class members will continue to suffer losses of statutory protected rights as well as monetary damages.  If Defendants' conduct is allowed to proceed without

remedy they will continue to reap and retain the proceeds of their ill-gotten gains.

- Defendants have acted on grounds generally applicable to the entire Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## STATEMENT OF FACTS

13.     On or about December 16, 2010, Plaintiff received a letter from LYONS attempting to collect a consumer debt allegedly owed by Plaintiff to Target National Bank. Said letter demanded payment of $2,806.53. A copy of said letter is annexed hereto as Exhibit A.

14.     Said letter stated in part, "ALSO, UPON YOUR WRITTEN REQUEST WITHIN 30 DAYS, THIS FIRM WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR IF DIFFERENT FROM THE CURRENT CREDITOR…"

15.     Upon receipt Plaintiff read said letter.

16.     On or before January 20, 2011, LYONS filed a Summons and Complaint in the Superior Court of New Jersey, Law Division – Special Civil Part, Union County, New Jersey, Docket No.: DC-001179-11, commencing a lawsuit against Plaintiff.  A copy of said Summons and Complaint are annexed hereto as Exhibit B.

17.     On or about January 28, 2011, LYONS sent Plaintiff a CONSENT JUDGMENT WITH TERMS and CERTIFIED DISCOVERY, together with a cover letter demanding that Plaintiff execute the consent judgment and provide answers to the discovery demands within ten (10) days.  A copy of said Consent Judgment, Certified Discovery, and cover letter are annexed hereto as Exhibit C.

18.     On February 14, 2011, Plaintiff retained the undersigned attorneys to file an Answer to the pending Complaint.

### COUNT I

### FAIR DEBT COLLECTION PRACTICES ACT 15 U.S.C. § 1692
### VIOLATION OF 15 U.S.C. § 1692g(a)(5)

19.     Plaintiff repeats the allegations contained in paragraphs 1 through 18 as if the same were here set forth at length.

20.     Collection letters and/or notices such as those sent by Defendants are to be evaluated by the objective standard of the hypothetical "least sophisticated consumer."

21.     Section 1692g of the FDCPA requires the debt collector to give what is commonly referred to as a thirty-day (30) notice within five (5) days of its communication with the consumer.

22.     Section 1692g(a)(5) of the FDCPA requires the debt collector to:

> Within five days after the initial communication with a consumer in connection with the collection of any debt… send the consumer a written notice containing --- a statement that, upon the consumer's written request with the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

23.     The thirty-day period set-forth in Section 1692g(a)(5) of the FDCPA starts upon receipt of the notice by the consumer.

24.     LYONS violated Section 1692g(a)(5) of the FDCPA by sending a notice to Plaintiff on or about December 16, 2010, attempting to collect an alleged debt, which stated in part, "ALSO, UPON YOUR WRITTEN REQUEST WITHIN 30 DAYS, THIS FIRM WILL

PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR IF DIFFERENT FROM THE CURRENT CREDITOR…"

25.    The least sophisticated consumer upon reading the notice will be confused as to when the time to request the name and address of the original creditor would expire.

26.    The least sophisticated consumer upon reading the notice would be confused as to whether the "WITHIN DAYS" as set-forth in the notice, expires thirty days form the date of the notice or thirty days from receipt of the notice.

27.    Defendants violated Section 1692g(a)(5) of the FDCPA by failing to inform Plaintiff in its initial communication that the thirty-day period to request in writing, the name and address of the original creditor, expires thirty days from the date on receipt of the notice by the consumer.

28.    By reason thereof, Defendants are liable to Plaintiff for declaratory judgment that Defendants' conduct violated Section 1692g(a)(5) of the FDCPA, actual damages, statutory damages, costs and attorneys' fees.

## COUNT II

### FAIR DEBT COLLECTION PRACTICES ACT 15 U.S.C. § 1692
### VIOLATION OF 15 U.S.C. § 1692e(10)

29.    Plaintiff repeats the allegations contained in paragraphs 1 through 28 as if the same were here set forth at length.

30.    Section 1692e(10) of the FDCPA prohibits the use of any false representation or deceptive means to collect or attempt to collect any debt.

31.    Defendants violated Section 1692e(10) of the FDCPA by failing to inform Plaintiff in its initial communication that the thirty-day period to request in writing, the name and

address of the original creditor, expires thirty days from the date on receipt of the notice by the consumer.

32.    Defendants further violated Section 1692e(10) of the FDCPA by using deceptive means and misrepresenting the time frame in which Plaintiff was entitled to in providing answers to the discovery demands by LYONS.

33.    New Jersey Court Rule 6:4-3(a) provides that for actions filed in the Special Civil part of the Superior Court of New Jersey, the time for serving and answering interrogatories shall be thirty (30) days.

34.    LYONS letter to Plaintiff dated January 28, 2011, demands that Plaintiff provide answers within ten (10) days. Exhibit C.

35.    Plaintiff suffered damages when LYONS misrepresented the time frame in which Plaintiff is entitled to, for providing  answers to the discovery demands.

36.    By reason thereof, Defendants are liable to Plaintiff for declaratory judgment that Defendants' conduct violated Section 1692e(10) of the FDCPA, actual damages, statutory damages, costs and attorneys' fees.

**WHEREFORE,** Plaintiff demands judgment against Defendants as follows:

(a)    Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class representative and, Joseph K. Jones, Esq., as Class Counsel;

(b)    Issuing a preliminary and/or permanent injunction restraining Defendants, their employees, agents and successors from, *inter alia,* engaging in conduct and practices that are in violation of the FDCPA;

(c)    Issuing a declaratory Order requiring Defendants to make corrective disclosures;

(d)      Awarding Plaintiff and the Class statutory damages;

(e)      Awarding Plaintiff costs of this Action, including reasonable attorneys'
fees and expenses; and

(f)      Awarding Plaintiff and the Class such other and further relief as this Court
may deem just and proper.


Dated: Fairfield, New Jersey
        February 15, 2011

                              _s/ Joseph K. Jones_____
                              Joseph K. Jones, Esq. (JJ5509)
                              Law Offices of Joseph K. Jones, LLC
                              375 Passaic Avenue, Suite 100
                              Fairfield, New Jersey 07004
                              (973) 227-5900 telephone
                              (973) 244-0019 facsimile
                              jkj@legaljones.com

### DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests a trial by jury on all issues so triable.

*s/ Joseph K. Jones*_____
Joseph K. Jones, Esq.

### CERTIFICATION PURSUANT TO LOCAL RULE 11.2

I, Joseph K. Jones, the undersigned attorney of record for Plaintiff, do hereby certify to my own knowledge and based upon information available to me at my office, the matter in controversy is not the subject of any other action now pending in any court or in any arbitration or administrative proceeding.

Dated: February 15, 2011

*s/ Joseph K. Jones*_____
Joseph K. Jones, Esq.

# Exhibit

# A

*Lyons, Doughty & Veldhuis, P.C.*

136 Gaither Drive • Suite 100 • P.O. Box 1269 • Mt. Laurel, NJ 08054
Two Owings Mills Corp. Ctr.•10461 Mill Run Circle•Owings Mills, MD 21117
Email: ldvlaw@ldvlaw.com • Website: www.ldvlaw.com
Phone: (856) 222-0166 • Fax: (856) 222-1711 • Toll-Free: (888) 322-3922 (NJ)
(888) 299-0499 (MD)    Reply to NJ Address

December 16, 2010

LISA A ARDINO
475 RAGLAND DR
ROSELLE PARK NJ 07204-2417

Re:    Target National Bank
       LISA A ARDINO
       Account No.: 4352375025809650

Dear LISA A Ardino:

Please be advised that this office represents Target National Bank in connection with your account.

We have been advised that your account is in default. Our client indicates that the amount due as of the date of this letter is $2,806.53 plus interest in the amount of $0.00 for a total of $2,806.53. Your balance may increase because of interest or other charges.

At this time, no attorney with this firm has personally reviewed the particular circumstances of your account.

If you have any questions concerning this matter or if you wish to arrange for payment, please contact our claims adjuster at 888-322-3922.

<u>IMPORTANT NOTICE CONCERNING YOUR RIGHTS</u>

THIS FIRM LYONS, DOUGHTY & VELDHUIS, P.C. IS A DEBT COLLECTOR. UNLESS YOU NOTIFY US WITHIN 30 DAYS AFTER THE RECEIPT OF THIS LETTER THAT THE VALIDITY OF THIS DEBT, OR ANY PORTION OF IT, IS DISPUTED, THIS FIRM WILL ASSUME THAT THE DEBT IS VALID. IF YOU DO NOTIFY US , IN WRITINGWITHIN 30 DAYS AFTER THE RECEIPT OF THISLETTER THAT THE VALIDITY OF THIS DEBT OR ANY PORTION OF IT IS DISPUTED, THIS FIRM WILL OBTAIN VERIFICATION OF THE DEBT OR COPY OF A JUDGMENT AGAINST YOU AND MAIL THE VERIFICATION OR JUDGMENT TO YOU. ALSO, UPON YOUR WRITTEN REQUEST WITHIN 30 DAYS, THIS FIRM WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR IF DIFFERENT FROM THE CURRENT CREDITOR. THIS LETTER IS AN ATTEMPT TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

EM

| David R. Lyons * | PAYMENTS CAN BE MADE ONLINE AT | Admitted in: | |
| Stephen P. Doughty * ★ | WWW.LDVLAW.COM | * | New Jersey |
| Hillary Veldhuis * ★ | | • | Pennsylvania |
| Laurie H. Lyons * • ▲ | | ★ | Delaware |
| Michele R. Gagnon ▲ | | ▲ | Maryland |
| Lauren Linker Keating * | | | |
| Nathan D. Willner, Of Counsel ▲ | | | |

LDV_l17                              LDV File No. 10-59381

# Exhibit

# B

SPECIAL CIVIL PART SUMMONS AND RETURN OF SERVICE – PAGE 2

| Plaintiff or Plaintiff's Attorney Information: | | |
|---|---|---|
| Demand Amount: | $2,806.53 |
| Filing Fee: | $0.00 |
| Service Fee: | $0.00 |
| Attorney's Fees | $0.00 |
| TOTAL | $2,806.53 |

Plaintiff or Plaintiff's Attorney Information:
Name:
David   Lyons
Address:
Lyons Doughty Veldhuis
136 Gaither Drive
Suite 100
Mount Laurel, NJ 08054-174
Telephone No.: (856) 222-0166

SUPERIOR COURT OF NEW JERSEY

LAW DIVISION, SPECIAL CIVIL PART

Target National Bank

UNION            COUNTY
2 Broad Street
Elizabeth, NJ 07207-0000
(908) 659-3637

Plaintiff(s)

versus

Docket Number:  DC-001179-11
(to be provided by the court)

Lisa A Ardino

Civil Action

SUMMONS

Defendant(s)

Contract_Reg

Defendant(s) Information: Name, Address & Phone

Lisa A Ardino
475 Ragland Dr        Roselle Park,  NJ 07204-2417

Date Served:  01/24/2011

RETURN OF SERVICE IF SERVED BY COURT OFFICER (For Court Use Only)

Docket Number: _____     Date: _____     Time: _____
WM____WF____BM____BF____OTHER____     HT____     WT____     AGE_____     MUSTACHE_____     BEARD_____     GLASSES_____
NAME: _____     RELATIONSHIP:_____
Description of Premises: _____
_____

I hereby certify the above to be true and accurate:

_____  _____ Court Officer

RETURN OF SERVICE IF SERVED BY MAIL (For Court Use Only)

I, Lois Kupecz, hereby certify that on 01/24/2011, I mailed a copy of the within summons and complaint by regular and certified mail, return receipt requested.

_____
Employee Signature

Lyons, Doughty and Veldhuis, P.C.
136 Gaither Drive, Suite 100
Po Box 1269
Mt Laurel, NJ 08054
Telephone: (856) 222-0166
Attorneys for Plaintiff

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION
SPECIAL CIVIL PART
UNION COUNTY
DOCKET NO.      DC-001179-11

TARGET NATIONAL BANK

                Plaintiff,

      v.

LISA A ARDINO

               Defendant(s).

CIVIL ACTION

COMPLAINT

Plaintiff, by way of Complaint, says:

1.    Defendant(s) entered into an agreement in accordance with the Charge Card Agreement, a copy of which is attached hereto as Exhibit A.

2.    Pursuant to the terms and provisions thereof, the defendant(s) became indebted to the plaintiff.

3.    The defendant(s) defaulted under the terms of said contract in that defendant(s) failed to make the payments due, and plaintiff has elected the entire unpaid balance to be due and payable.

4.    There is now due from Defendant(s) to Plaintiff the following

        BALANCE DUE    $2,806.53

WHEREFORE, plaintiff demands judgment for the above total due, plus interest and costs.

                        Lyons, Doughty and Veldhuis, P.C.
                        Attorneys for Plaintiff

                        S/ David R. Lyons
                        David R. Lyons, Esquire

## RULE 4:5-1 CERTIFICATION

The undersigned attorneys for plaintiff certify that the matter in controversy is not the subject of any other action pending in any Court or of a pending arbitration proceeding, nor is any other action or arbitration proceeding contemplated. I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

Lyons, Doughty and Veldhuis, P.C.
Attorneys for Plaintiff

S/ David R. Lyons
David R. Lyons, Esquire

# Credit Card Agreement
## Target® Visa® Card

This Agreement explains the terms that you agree to follow for your Target Visa Account ("Account"). The card carrier we send with your credit card is a part of this Agreement. In this Agreement "we", "us", and "our" mean Retailers National Bank. "You" and "your" mean everyone who is liable for payment on the Account. "Card" refers to your Target Visa credit card.

1. **USE OF YOUR ACCOUNT.** When you apply for an Account, you promise to be bound by the terms of this Agreement. You promise to pay us for all credit extended under this Agreement and all other amounts owed to us by you according to the terms of this Agreement. If the Account is a joint Account, each of you is bound by this Agreement and each of you jointly and individually promises to pay us, and may be held liable for, all amounts owed to us on your Account. You also promise to pay us for charges incurred by anyone you allow to use your Account. If you give your Card to someone and authorize their use of the Card, you must regain possession to terminate their authorized use. You agree that you will not use or allow use of your Card or Account for any illegal transaction or purpose.

You may use your Card to make purchases of goods or services wherever Visa cards are accepted ("Purchases"). You may also use your Card to obtain cash advances from participating automated teller machines, financial institutions, or other locations ("Cash Advances"). Your use of Target Visa convenience checks furnished by us, balance transfers, and your purchase of cash equivalents, such as casino chips or similar items, wagers, wire transfers, money orders, foreign currency, travelers' checks, vouchers redeemable for cash or other items really convertible into cash are treated as Cash Advances under this Agreement.

2. **CREDIT LIMIT.** We agree that we may establish a credit limit for your Account, a portion of which will be available for Cash Advances (each, a "Credit Limit"). You agree that we may change a Credit Limit from time to time, including based upon our evaluation of changes in your credit capacity or based on your pattern of payments to us. We may, but are not required to, approve transactions that exceed your Credit Limit without liability to you and without obligating us to do so in the future. You agree to prevent your Account balance or Cash Advance balance from exceeding the applicable Credit Limit.

3. **SPECIAL PROMOTIONS.** Occasionally, we may provide you the opportunity to use your Account in connection with special promotions, including balance transfers or use of Target Visa convenience checks or otherwise. These promotions may be subject to terms and conditions in addition to or different from those provided in this Agreement, which will be described in our offer. Unless otherwise stated, however, all terms of this Agreement shall apply to any promotion.

4. **PAYMENTS.** Your billing statement will show the amount you owe us, which is the New Balance, and the smallest amount you have agreed to pay us for that billing period, which is the Minimum Payment Due. If any portion of the New Balance is delinquent, the statement will show the Amount Past Due. The statement will also tell you the Payment Due Date.

The Minimum Payment Due will be 2.5% of your New Balance each month, rounded to the next higher whole dollar amount, or $10.00, whichever is greater. If your New Balance is less than $10.00, the Minimum Payment Due will be the entire New Balance. If there is an Amount Past Due, we will add that amount to your Minimum Payment Due.

You agree to pay us in United States Dollars for all amounts for which you are liable. If you pay by check, your check must be drawn on a depository institution located in the United States. If you do not pay the New Balance in full, you agree to pay by your Payment Due Date at least the Minimum Payment Due. All payments and other credits will be applied to your Account as we choose. We may apply payments and other credits to balances on your Account with a lower Annual Percentage Rate before balances with a higher Annual Percentage Rate. You may, at any time, pay the total amount owing on your Account.

5. **UNAUTHORIZED USE.** If your Card or convenience checks are lost or stolen, or you think that someone is using your Account without your permission, you agree to notify us immediately. You can notify us by calling 1-888-755-5858, or by writing Retailers National Bank, c/o Target Check Services, 3701 Wayzata Boulevard, MS 2C-K, Minneapolis, MN 05818. If you notify us by telephone, you agree to confirm

your notification in writing. You are not liable for unauthorized use of the Account that occurs after you notify us of the loss, theft or possible unauthorized use. Your liability for any unauthorized use will not exceed $50. You agree to assist us in determining the facts relating to any theft or possible unauthorized use of your Account and to comply with the procedures we may require for our investigation. All Cards and convenience checks are issued by us to you and you must return or destroy your Card and/or convenience checks if we request you to do so.

6. **CREDIT AUTHORIZATIONS.** Some transactions will require our prior authorization and you may be asked to provide identification. If our authorization system is not working, we may not be able to authorize a transaction. We will not be liable to you if any of these events happen or for any failure to authorize a transaction. We are also not responsible for the refusal of anyone to accept your Card or a Target Visa convenience check.

7. **FINANCE CHARGES.**

   - **FINANCE CHARGE FOR BILLING PERIOD** – The total Finance Charge on your Account for a billing period is the sum of any Periodic Finance Charges and any Transaction Finance Charges. However, there is a minimum FINANCE CHARGE of $1.00 for any billing period in which a Finance Charge is imposed.

   - **COMPUTATION OF PERIODIC FINANCE CHARGES** – We maintain separate balances for your Purchases, Cash Advances and special promotional balances (each, a "Balance Type") and calculate a Daily Balance for each such. We will figure a Daily Periodic Finance Charge for each Balance Type by multiplying your Daily Balance of each Balance Type by the applicable Daily Periodic Rate. However, no Periodic Finance Charges will be imposed on Purchases for any day in a billing period if there is no Previous Balance on your Account or the sum of payments on your Account made by the Payment Due Date equals or exceeds the New Balance shown on your billing statement. At the end of the billing period, we will add up the daily Periodic Finance Charges on all Balance Types for each day in the billing period to get the total Periodic Finance Charge for the billing period. You can verify your Periodic Finance Charge for each Balance Type by multiplying the Average Daily Balance shown on the billing statement times the applicable Daily Periodic Rate, times the number of days in the billing period.

   - **COMPUTATION OF DAILY BALANCES** – To determine the Daily Balance for a Balance Type, we take the beginning balance for the Balance Type, add any new charges included in that Balance Type, and subtract any payments and credits applied to that Balance Type. We then multiply the resulting balance by the applicable Daily Periodic Rate and that daily Periodic Finance Charge is included in the beginning balance of that Balance Type for the next day. Purchases and Cash Advances are included in the Daily Balance as of the later of the transaction date or the first day of the billing period in which the Purchase or Cash Advance is posted to the Account. Transaction Finance Charges are included in the Daily Balance of Cash Advances, and Other Charges are included in the Daily Balance of Purchases, when posted to the Account.

   - **WHEN PERIODIC FINANCE CHARGES BEGIN TO ACCRUE FOR PURCHASES** – New Purchases included in the Daily Balance in a billing period in which Periodic Finance Charges are not imposed on Purchases will begin to accrue Periodic Finance Charges as of the first day of the next billing period if Periodic Finance Charges are imposed on Purchases in that billing period. New Purchases included in the Daily Balance in a billing period in which Periodic Finance Charges are imposed on Purchases will begin to accrue Periodic Finance Charges as of the date the Purchase is included in the Daily Balance. A new Purchase is a Purchase that appears on a billing statement for the first time.

   - **WHEN FINANCE CHARGES BEGIN TO ACCRUE FOR CASH ADVANCES** – Periodic Finance Charges begin to accrue on Cash Advances as of the date the Cash Advance is included in the Daily Balance. There is no time period within which you can repay a Cash Advance without paying Periodic Finance Charges.

   - **DAILY PERIODIC RATES**
     DAILY PERIODIC RATE FOR PURCHASES – The Daily Periodic Rate for Purchases is .0571% (corresponding ANNUAL PERCENTAGE RATE 20.9%).
     DAILY PERIODIC RATE FOR CASH ADVANCES – The Daily Periodic Rate for Cash Advances is .05178% (corresponding ANNUAL PERCENTAGE RATE 21.9%).
     DAILY PERIODIC RATE FOR DELINQUENT ACCOUNTS – If at any time all or a portion of two Minimum Payments Due are late, a higher Daily Periodic Rate and

corresponding Annual Percentage Rate will apply to your Balance Types and all new transactions beginning with the first day of the next billing period. The Daily Periodic Rate for all Balance Types will be .06821% (corresponding ANNUAL PERCENTAGE RATE 24.9%). After you have made your required Minimum Payment Due (if any) by the Payment Due Date in six consecutive billing periods, beginning with the first day of the next billing period we will reduce your Daily Periodic Rate for Purchases to .0571% (corresponding ANNUAL PERCENTAGE RATE 20.9%) and we will reduce your Daily Periodic Rate for Cash Advances to .06000% (corresponding ANNUAL PERCENTAGE RATE 21.9%)

   - **TRANSACTION FINANCE CHARGES** – The following Transaction FINANCE CHARGES will be assessed on your Account:
     BALANCE TRANSFERS – 3% of each balance transfer by means other than a Target Visa convenience check, with a minimum of $5.00 and a maximum of $40.00.
     OTHER CASH ADVANCES – 3% of the amount of each new transaction (including the use of Target Visa convenience checks), with a minimum of $5.00 and no maximum.
     PHONE-PAY FEE – $10.00 each time you request over the phone that we transfer, or draw funds from your deposit account to pay your Target Visa Account. The imposition of Transaction Finance Charges may result in an actual Annual Percentage Rate on your billing statement that is higher than the Annual Percentage Rate described above that corresponds with the Daily Periodic Rate used to determine Periodic Finance Charges.

8. **OTHER CHARGES.** The following fees ("Other Charges") may be assessed on your Account:

   - LATE PAYMENT FEE – You will pay $29.00 each time any amount due remains unpaid after your Payment Due Date.
   - OVER-THE-CREDIT-LIMIT FEE – You will pay $29.00 if your Account balance exceeds your Credit Limit.
   - RETURNED PAYMENT FEE – You will pay $29.00 each time any check or other payment order (including an electronic payment) is not honored by your depository institution.
   - RETURNED CONVENIENCE CHECK FEE – You will pay $29.00 each time we decline to honor a Target Visa convenience check.
   - CONVENIENCE CHECK STOP PAYMENT FEE – You will pay $29.00 each time we, at your request, stop payment on a Target Visa convenience check.
   - DOCUMENTATION REPRODUCTION FEE. We will not charge you for duplicate documents we reproduce for you in connection with a billing error notice or if our investigation includes a billing error occurred. Otherwise, you will pay $2.00 for each duplicate Account document we reproduce for you at your request.
   - EXPEDITED DELIVERY FEE – At your request, we will expedite the delivery of an additional or replacement Card for your Account. You will reimburse us for delivery and other charges imposed on us by third parties for this expedited service.

9. **FOREIGN EXCHANGE OR CURRENCY CONVERSION.** If you incur a transaction in foreign currency, the transaction amount will be converted by Visa International into a U.S. dollar amount. Visa will use the procedures set forth in its Operating Regulations in effect at the time that the transaction is processed. Currently, the Operating Regulations provide that the currency conversion rate to be used is either (1) a wholesale market rate, or (2) a government-mandated rate in effect one day prior to the processing date, increased by 1% in each case. Visa retains the 1% as compensation for performing the currency conversion service. The currency conversion rate to be in effect on the processing date may differ from the rate in effect on the transaction date or the posting date.

10. **ACCORD AND SATISFACTION.** We may accept letters, checks or other types of payments showing "payment in full" or using other language to indicate satisfaction of your debt ("Disputed Amount") without waiving any of our rights to receive full payment under the terms of this Agreement. We agree to send any Disputed Amount to the address for billing inquiries shown on your billing statement.

11. **CREDIT INVESTIGATION AND REPORTING.** We may check your information about you or your Account when you open your Account, at any time you submit additional requests for credit and for renewals of, and to collect, your Account. You authorize us to report information about your Account, and our experience with you to credit bureaus or others as allowed by law. If you do not fulfill the terms of this Agreement, we may submit a negative report reflecting on your credit record to one or more credit bureaus. If you

believe we have reported inaccurate information about your Account to a credit bureau, you should notify us by sending your Account number and a description of the information you believe to be inaccurate to the address for disputes regarding information we reported to credit bureaus shown on your billing statement.

12. DEFAULT/TERMINATION OF CREDIT PRIVILEGES. Subject to applicable law, you will be in default under this Agreement if you violate any term of this Agreement, fail to make the Minimum Payment Due by the Payment Due Date, or become the subject of bankruptcy or insolvency proceedings. Upon default or death, subject to applicable law, we may, in our sole discretion: (a) reduce your Credit Limit; (b) terminate the Account, at which time the terms of this Agreement will continue until we have been paid in full; (c) require immediate payment for each Balance Type and all related fees and charges described in this Agreement; (d) bring a legal action against you to collect money owed to us; (e) terminate any special promotional credit terms; or (f) take any other action permitted by applicable law. If we refer your Account to an attorney for collection, you must pay to us all costs and expenses of collection, including attorneys' fees, to the extent not prohibited by law. Even if you are not in default, we reserve the right to terminate your privileges to obtain credit on the Account at any time. Upon any termination of this Agreement by you or us, you will continue to be obligated to pay all amounts owing under this Agreement, and to otherwise perform the terms and conditions of this Agreement.

13. COMMUNICATIONS WITH YOU. We or our agents may call by telephone regarding your Account. You agree that we may place such calls using an automatic dialing/announcing device. You agree that we may, for training purposes or to evaluate the quality of our service, listen to and record phone conversations you have with us.

14. WHAT LAW APPLIES. This Agreement will be governed by federal law and by the law of South Dakota. If there is any conflict between any of the terms and conditions of this Agreement and applicable federal or state law, this Agreement will be considered changed to the extent necessary to comply with the law.

15. CHANGE OF PERSONAL INFORMATION. You agree to tell us right away of any change in your name, address or telephone numbers.

16. ASSIGNMENT OF ACCOUNT. We may sell, assign or transfer your Account or any receivables created under your Account without notice to you. You may not sell, assign or transfer your Account without our written consent.

17. NO WAIVER. We may waive or delay enforcing any of our rights under this Agreement without losing them.

18. CHANGES TO THIS AGREEMENT. We have the right to change this Agreement (including the right to add additional terms) and to apply those changes to any existing balance on the Account. We will provide you with notice of any such changes as required by applicable law.

NOTICE TO NEW YORK RESIDENTS. A consumer credit report may be ordered in connection with this application, or subsequently with this update, renewal or extension of credit. Upon your request, you will be informed of whether or not a consumer credit report was ordered, and if it was, you will be given the name and address of the consumer reporting agency that furnished the report.

NOTICE TO RHODE ISLAND AND VERMONT RESIDENTS. A consumer credit report may be ordered in connection with this application, or subsequently for purposes of review or collection of the account, increasing the credit line on the account, or other legitimate purposes associated with the account.

NOTICE TO OHIO RESIDENTS. The Ohio laws against discrimination require that all creditors make credit equally available to all credit worthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

NOTICE TO WISCONSIN RESIDENTS. If you do not pay on time, we can declare the entire Prior Balance due and payable unless we have given you proper written notice and no have failed to cure the default within fifteen (15) days after the notice; however, a gift is due does not exist if both defaults have been cured within the preceding twelve (12) months. We will not be afforded advance by provisions of any marital property agreement, unilateral statement or court decree under Sections 766.59 and 766.70 of Wisconsin law, unless we receive a copy of the document or have knowledge of its terms before the Account is opened.

5

---

OPTIONAL SAFETYNET™ BALANCE PROTECTION PROGRAM
TERMS AND CONDITIONS

If you are enrolled in the optional SafetyNet Balance Protection Program, the SafetyNet Balance Protection Program Terms and Conditions are also a part of your Target Visa Card Credit Card Agreement. Call 1-888-558-0012 to request an additional copy of the SafetyNet Terms and Conditions.

## YOUR BILLING RIGHTS
### (KEEP THIS NOTICE FOR FUTURE USE)

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us in Case of Errors or Questions About Your Bill.**

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at the address shown on the back of your statement under the summary of your billing rights. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

* Your name and Account number
* The dollar amount of the suspected error.
* Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

**Your Rights and Our Responsibilities After We Receive Your Written Notice**

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

**Special Rule for Credit Card Purchases**

If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

(a) You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and

(b) The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

6

---

## THIS BROCHURE CONTAINS IMPORTANT INFORMATION REGARDING CHANGES TO YOUR TARGET CREDIT CARD ACCOUNT.

**SUMMARY OF CERTAIN TERMS CHANGES**

**KEY DIFFERENCES BETWEEN TARGET VISA CARD AND TARGET GUEST CARD**

THERE ARE DIFFERENCES BETWEEN THE TERMS OF YOUR NEW TARGET VISA CARD AND YOUR PREVIOUS TARGET GUEST CARD, AS SUMMARIZED BELOW. BY ACTIVATING YOUR TARGET VISA CARD, YOU WILL BE AGREEING TO ITS TERMS. THESE TERMS WILL ALSO APPLY TO BALANCES TRANSFERRED FROM YOUR TARGET GUEST CARD AT THE END OF THE BILLING PERIOD IN WHICH YOU ACTIVATE YOUR TARGET VISA CARD. Please read the entire Target Visa Credit Card Agreement carefully and retain it for your records. If you do not accept the terms of the Target Visa Card, do not activate the Card. Your Target Guest Card will be closed to further use and you must pay off any outstanding balance on your Target Guest Card under the current terms of that card. Please call 1-888-755-5856 if you have any questions.

**MINIMUM MONTHLY PAYMENT**
Under the terms of your Target Visa Card, your Minimum Monthly Payment will be 2.5% of your New Balance each month, rounded to the next higher whole dollar amount or $10.00, whichever is greater. See paragraph 4 of the Credit Card Agreement for a further description.

**ANNUAL PERCENTAGE RATE FOR PURCHASES**
Under the terms of your Target Visa Card, the ANNUAL PERCENTAGE RATE for Purchases will be a fixed rate of 18.9%. See paragraph 7 of the Credit Card Agreement for a further description.

**ANNUAL PERCENTAGE RATE FOR DELINQUENT ACCOUNTS**
Under the terms of your Target Visa Card, if at any time all or a portion of two Minimum Payments Due are late, an ANNUAL PERCENTAGE RATE of 24.9% will apply to your outstanding balance and all new transactions beginning with the first day of the next billing period. See paragraph 7 of the Credit Card Agreement for a further description.

**ANNUAL PERCENTAGE RATE FOR CASH ADVANCES**
Under the terms of your Target Visa Card, the ANNUAL PERCENTAGE RATE for Cash Advances will be a fixed rate of 21.9%. There is no grace period for Cash Advances. In addition, there will be transaction FINANCE CHARGES as follows:
BALANCE TRANSFERS – 0% of each balance transfer by means other than a Target Visa convenience check, with a minimum of $5.00 and a maximum of $40.00.
OTHER CASH ADVANCES – 3% of the amount of each new transaction (including the use of Target Visa convenience checks), with a minimum of $5.00 and no maximum.
PHONE-PAY-FEE – $10.00 each time you request over the phone that we transfer or draw funds from your deposit account to pay your Target Visa Account.

**MINIMUM FINANCE CHARGE**
Under the terms of your Target Visa Card, there is a minimum FINANCE CHARGE of $1.00 for any billing period in which a Finance Charge is imposed. See paragraph 7 of the Credit Card Agreement for a further description.

**OTHER CHARGES**
See paragraph 8 of the Credit Card Agreement for a description of Other Charges applicable to your Target Visa Card. These charges include:
LATE PAYMENT FEE – You will pay $29.00 each time any amount due remains unpaid after your Payment Due Date.
OVER-THE-CREDIT-LIMIT FEE – You will pay $29.00 each time your balance exceeds your Credit Limit.
RETURNED PAYMENT FEE – You will pay $29.00 each time any check or other payment order (including an electronic payment) is not honored by your depository institution.
DOCUMENTATION REPRODUCTION FEE – You may have to pay $2.00 for each duplicate Account document we reproduce for you at your request.
RETURNED CONVENIENCE CHECK FEE – You will pay $29.00 each time we decline to honor a Target Visa convenience check.
CONVENIENCE CHECK STOP PAYMENT FEE – You will pay $29.00 each time we, at your request, stop payment on a Target Visa convenience check.

12/21 34273
1V-7655-05/02

7

# Exhibit

# C



*Lyons, Doughty & Veldhuis, P.C.*

136 Gaither Drive • Suite 100 • P.O. Box 1269 • Mt. Laurel, NJ 08054
Two Owings Mills Corp. Ctr.•10461 Mill Run Circle•Owings Mills, MD 21117
Email: ldvlaw@ldvlaw.com • Website: www.ldvlaw.com
Phone: (856) 222-0166 • Fax: (856) 222-1711 • Toll-Free: (888) 322-3922 (NJ)
(888) 299-0499 (MD)    Reply to NJ Address

January 28, 2011

Lisa A Ardino
475 Ragland Dr
Roselle Park NJ 07204-2417

### PAYMENT ARRANGEMENT CONFIRMATION

Re:     Target National Bank  v.  LISA A  ARDINO
        Docket No. DC-001179-11

Dear Lisa A  Ardino:

Pursuant to our agreement, enclosed is a Consent Judgment with Terms along with a Certified Discovery.  If you have not already been served, you will be served with a Summons and Complaint.

Please review the Consent Judgment and Certified Discovery.  Complete the questions on the Certified Discovery and sign both on the line indicated.  **Return all documents to me in the envelope provided within ten (10) days.  If you fail to return these papers within ten (10), we will proceed with our legal remedies.**

Your check or money order made payable to the firm should be mailed to our office on or before February 04, 2011.  We also enclose a coupon book with 12 coupons.  Kindly submit one coupon with each payment.  Upon receipt of coupon #12 a new book will be mailed to you.

Please be advised that in addition to the judgment figure, interest will accrue at the prevailing judgment rate on the unpaid balance.  If additional costs are required, they will also be added to the amount of the Judgment.

If you have any questions, please contact our claims adjuster at 888-322-3922.

### THIS FIRM IS A DEBT COLLECTOR

EM

David R. Lyons *
Stephen P. Doughty * ★
Hillary Veldhuis * ★
Laurie H. Lyons * •▲
Michele R. Gagnon ▲
Lauren Linker Keating *
Nathan D. Willner, Of Counsel ▲

PAYMENTS CAN BE MADE ONLINE AT
WWW.LDVLAW.COM

Admitted in:
*    New Jersey
•    Pennsylvania
★    Delaware
▲    Maryland

Lyons, Doughty and Veldhuis, P.C.
136 Gaither Drive, Suite 100
Po Box 1269
Mt Laurel, NJ 08054
Telephone: (856) 222-0166
Attorneys for Plaintiff

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION
SPECIAL CIVIL PART
UNION COUNTY
DOCKET NO. DC-001179-11

TARGET NATIONAL BANK

                Plaintiff,

        v.

LISA A ARDINO

              Defendant(s).

CIVIL ACTION

CONSENT JUDGMENT WITH TERMS

**THIS MATTER** having come before the Court on the Summons and Complaint filed by the Plaintiff, TARGET NATIONAL BANK; the parties, having consented to the entry of this Judgment on the terms set forth below; for good cause shown and no cause to the contrary appearing;

**IT IS** on this _____ day of _____, 20_____ **ORDERED** that Final Judgment is entered in favor of the Plaintiff, TARGET NATIONAL BANK, and against Defendant(s), LISA A ARDINO  the sum of $2,806.53 plus costs.

**IT IS FURTHER ORDERED** that:

    1.    Defendant(s) shall pay to Plaintiff the full amount of $2,806.53 plus interest at the prevailing judgment rate to be paid in installments of $160.00 monthly.

    2.    Defendant(s) shall begin making payments on February 04, 2011 and shall make such payments each month thereafter until the full amount of $2,806.53 plus interest and costs is satisfied.

    3.    If Defendant(s) fails to make payment within ten (10) days from the date of its maturity, then Plaintiff is free to pursue other legal remedies.

4.      Said payments are to be forwarded to the office of attorney's for Plaintiff whose name and address is set forth above.

_____

We hereby consent to the form and entry of this Consent Judgment:

I hereby consent to the form
and entry of this Consent Judgment:


_____
Lisa A  Ardino
Defendant


_____

Defendant

<u>CERTIFIED DISCOVERY</u>

NAME:  LISA A  ARDINO

ADDRESS:  475 RAGLAND DR  ROSELLE PARK NJ 07204-2417

NAME:

ADDRESS:

TELEPHONE NO: _____

Married  [          ] Single  [          ] Separated  [          ] Divorced  [          ]

Spouse's Name: _____

Number of children you support: _____

Own home or buying: _____ Mortgage payment per month  $_____

Renting: _____ Amount of rent payment per month  $_____

Employer:  (LISA A  ARDINO) _____

Address: _____

Pay -Gross: $_____ Pay -Net: $_____

Employer: () _____

Address: _____

Pay-Gross: $_____ Pay-Net: $_____

Do you have a bank account? _____

What Bank? _____

Do you have any judgment against you? _____

If yes, is there a Court Order for payments? _____

To whom do you send payments?_____

Address: _____

    I certify that the foregoing statements made by me are true.

DATED: _____    _____

                                        LISA A  ARDINO

                               _____